IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER B.,                      )
                                     )
                Plaintiff,           )
                                     )
         v.                          )      1:22-CV-920
                                     )
MARTIN J. O'MALLEY,                  )
Commissioner of Social               )
Security,                            )
                                     )
                Defendant.           )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Christopher B. challenges the decision of the Commissioner of the Social Security Administration,[1] who denied his application for disability insurance benefits under the Social Security Act. Before the court are Plaintiff's objections to the magistrate judge's report recommending that the court affirm the final decision of the Commissioner. (Doc. 17.) For the reasons set forth below, the decision of the Commissioner will be reversed, and this matter will be remanded for further proceedings.

## I.  BACKGROUND

Plaintiff protectively filed an application for disability insurance benefits on January 14, 2021, alleging disability as of July 21, 2020, due to psychosis, attention deficit hyperactivity

---

[1] Martin J. O'Malley was sworn in as the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

disorder ("ADHD"), insomnia, high blood pressure, low testosterone, anxiety, and opioid addiction. (Tr. at 27, 196.)[2] The North Carolina state agency denied his claim at the initial and reconsideration levels of review. (Tr. at 59-84.) On March 9, 2022, an administrative law judge ("ALJ") held a telephonic hearing at which Plaintiff and an impartial vocational expert testified. (Tr. at 43-58.) On March 18, 2022, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 27-38.) Finding no basis to disturb the ALJ's decision, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. at 1-7.) This civil action followed.

In rendering his decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025 (Exhibit 6D, page 1).

2. The claimant has not engaged in substantial gainful activity since July 21, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: Attention-deficit/hyperactivity disorder (ADHD); generalized anxiety disorder (GAD); major depressive disorder (MDD); and opioid dependence (20 CFR 404.1520(c)).

---

[2] Transcript references are to the sealed administrative record at docket entry 8.

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any, workplace changes; he could perform work requiring no interaction with the public; and he could have occasional interaction with co-workers and he could be around them throughout the day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).[3]

7. The claimant was born on April 19, 1978 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 21, 2020, through the date of this decision (20 CFR 404.1520(g)).

---

[3] Plaintiff was previously employed as a jailer. (Tr. at 36.)

(Tr. at 29-38.)

Following briefing by the parties (Docs. 12, 13, 14), the magistrate judge issued a recommended ruling on November 14, 2023 (Doc. 15). He found that the "Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review," and recommended that it be upheld. (Doc. 15 at 19-20.) Plaintiff timely filed objections. (Doc. 17). The Commissioner has not filed a response.[4]

## II. ANALYSIS

### A. Legal Standard

#### 1. Review of Magistrate Judge's Recommendation

When considering a magistrate judge's report and recommendation, a district court must conduct a "de novo

---

[4] Plaintiff submitted two medical records to the Appeals Council, dated April 6, 2022, and July 27, 2022, that appear to demonstrate an escalation in symptoms following the ALJ's opinion. (Tr. at 8-18.) The Appeals Council declined to consider these records because they did "not relate to the period at issue" — i.e., the period prior to the March 18, 2022 ALJ decision date. (Tr. at 2.) The records are, in any event, part of the certified administrative record. Plaintiff cited them in this action in an index to his brief, (Doc. 12-1), but has not explicitly requested that the court consider them or challenged the Appeals Council's decision not to consider them. Thus, the court has not considered the records here and does not base its ruling on the Appeals Council's decision not to consider them. 20 C.F.R. § 404.970(b)-(c) (describing when Appeals Council will consider additional evidence); Wilkins v. Sec'y, Dep't of Health & Hum. Servs., 953 F.2d 93, 96 (4th Cir. 1991) (describing evidence as "new" when it is "not duplicative or cumulative" and as "material" when "there is a reasonable possibility that the new evidence would have changed the outcome"); see also Norris v. Colvin, 142 F. Supp. 3d 419, 423-25 (D.S.C. 2015) (remanding to Commissioner where only discernible rationale for Appeals Council not considering new evidence that appeared to relate back was that it was dated after the ALJ's opinion).

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In doing so, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The district court must review the entire record to determine whether the magistrate judge's findings are adequately supported by the record. See Johnson v. Knable, 934 F.2d 319 (Table), 1991 WL 87147, at *1 (4th Cir. May 28, 1991) (per curiam). Where a party fails to object to a recommendation, however, the court's review is for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### 2. Judicial Review of Commissioner's Decision

"[A] reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)

5

(internal brackets and quotation omitted).

"A claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The Commissioner evaluates whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

Where, as here, a claimant clears steps one and two, but falters at step three, then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Mastro, 270 F.3d at 179. RFC measures the most a claimant can do despite any physical and mental limitations. Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006). After determining a claimant's exertional and non-exertional capacity in consideration of all of his impairments and

6

symptoms, the ALJ must determine an appropriate level of work. Id. at 562-63.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The ALJ is also obligated to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. While the ALJ need not discuss every piece of evidence, the decision must supply an "accurate and logical bridge" between the evidence and the conclusions. Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017); Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) ("[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two.").

Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Mastro, 270 F.3d at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite his

7

impairments." <u>Hines</u>, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.

### B. Plaintiff's Objections

Plaintiff objects to the ALJ's RFC analysis, which the magistrate judge recommended be affirmed. First, Plaintiff argues that the ALJ's "RFC rationale" is "not supported by substantial evidence, flouts the law, and conflicts with the ALJ's other findings." (Doc. 17 at 3.) He points specifically to the ALJ's consideration of his daily activities and treatment notes and inconsistencies between the ALJ's step three analysis and the RFC analysis. (<u>Id.</u> at 3-13.) Second, Plaintiff contends that the ALJ erred in finding unpersuasive his treating psychiatric provider's medical opinions. (<u>Id.</u> at 13-18.) Third, Plaintiff asserts that the ALJ erred in discounting his subjective complaints. (<u>Id.</u> at 18-22.)

The ALJ's RFC analysis first addresses Plaintiff's subjective complaints. (Tr. at 33.) In doing so, the ALJ considers the

consistency of the subjective complaints with Plaintiff's medical records and daily activities. (Tr. at 34-35.) Thereafter, the RFC incorporates by reference his findings on those topics in a paragraph explaining the RFC. (Tr. at 35.) The opinion concludes with a review of the medical opinions in the case. (Tr. at 35-36.)

Preliminarily, Plaintiff's first objection regarding the "RFC rationale" almost entirely parallels his third objection regarding the subjective complaints, as both maintain that the ALJ erred when considering daily activities and medical records. (See Doc. 17 at 3-13, 18-22.) The ALJ's most explicit "rationale," (Tr. at 35 (paragraph beginning "The objective findings. . ."), incorporates by reference the ALJ's analysis on the subjective complaints. The court will therefore consider the third objection regarding subjective complaints first. In doing so, the court finds that the ALJ erred, including in those portions of his opinion that incorporate by reference the below-mentioned erroneous analysis, most notably the paragraph beginning "The objective findings . . ." (Tr. at 35). See also infra (discussing same error regarding ALJ's review of treating psychiatric provider's medical opinion (see Tr. at 36)).

### 1. Subjective Complaints

Plaintiff objects to the ALJ's dismissal of his subjective complaints as not credible. (Doc. 17 at 18-22.) The ALJ here

9

"evaluated the claimant's and [his wife's] statements about the intensity, persistence, and limiting effects of his symptoms and determined that they were not generally consistent with the record as a whole." (Tr. at 33.) The inconsistencies with Plaintiff's subjective complaints that the ALJ identified were Plaintiff's "positive response to psychiatric medication management, limited positive psychiatric examination findings, and reported functioning." (Id.)

Plaintiff contends that the reliance on "positive response to psychiatric medication management" and "limited positive psychiatric examination findings" to discount his subjective complaints is error because the ALJ "cherry-picked" the medical record. (Doc. 17 at 9-11.) Additionally, Plaintiff argues that the ALJ only considered the type of activities (i.e., "reported functioning"), and not the extent to which the Plaintiff could perform them, which, in Plaintiff's view, reflects only an ability to do unscheduled, abbreviated activities, rather than a 40-hour work week. (Id. at 9.)

### a. Plaintiff's Subjective Symptoms

"The ALJ evaluates a claimant's symptoms through a two-prong framework found in SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which is further elaborated in 20 C.F.R. § 404.1529." Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 359-60 (4th Cir. 2023). For the first prong, the ALJ must decide whether there is

10

"an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms."  Id. at 360 (citing SSR 16-3p, 2016 WL 1119029).  For the second prong, the ALJ considers "the 'entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'"  Id. (citing SSR 16-3p, 2016 WL 1119029, at *4).[5]  An ALJ may not disregard a claimant's subjective statements regarding the "intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  SSR 16-3p, 2016 WL 1119029, at *5.

Critically, an ALJ precludes "meaningful review" of his findings where he fails to "adequately explain his reasoning."

---

[5] These factors are further elaborated on in 20 C.F.R. § 404.1529(c)(3), which lists as factors: 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

_Radford v. Colvin_, 734 F.3d 288, 296 (4th Cir. 2013). Moreover, an ALJ may not "cherry-pick[] from the record" by highlighting "good moments and bypassing the bad." _Shelley C._, 61 F.4th at 362; _Arakas v. Comm'r, Soc. Sec. Admin._, 983 F.3d 83, 98 (4th Cir. 2020) ("In evaluating a disability claim, [a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (internal quotations marks omitted)). In such instances, it is not the "province of the district court" to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." _Radford_, 734 F.3d at 296 (internal quotations marks omitted). Rather, the appropriate remedy is to vacate and remand for further investigation and explanation. _Mascio v. Colvin_, 780 F.3d 632, 636 (4th Cir. 2015) ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (internal quotation marks omitted and alteration in original)).

Turning to Plaintiff's subjective complaints identified by the ALJ, in his application materials Plaintiff reported ADHD, anxiety, insomnia, opioid addiction, psychosis with "extreme paranoia" and psychotic break, high blood pressure, and low

testosterone, and later added asthma, major depression with psychotic features, hallucinations, paranoia, and opioid dependence. (Tr. at 33.) In a Functions Report, Plaintiff reported problems with his memory, following instructions, concentrating or paying attention, completing tasks, getting along with others, handling stress, and medication side-effects, including chills, confusion, cough, drowsiness, fever, headaches, insomnia, memory loss, and "severe" anxiety. (Id.) In the March 9, 2022 hearing before the ALJ, Plaintiff reported mood symptoms, poor memory and concentration, poor sleep, psychosis, and problems leaving his home, as well as hallucinations, paranoid thought content (such as thinking others were trying to kill him). (Id.) He estimated he could only stay on task for thirty minutes at a time. (Id.) Plaintiff's wife submitted Third-Party Function reports in 2021 that the ALJ noted "largely echoed the claimant's allegations." (Id.)

The ALJ found that these subjective complaints were undermined by Plaintiff's "positive response to psychiatric medication management" and "limited positive psychiatric examination findings." (Id.) The ALJ analyzed Plaintiff's symptoms as presented in the medical records as follows:

> He consistently presented with "mild" or "stable" symptoms throughout the period at issue, which further suggested that his routine psychiatric medication management was effective. His treatment notes also show that he has not had any documented or reported incidents

of opioid relapse since starting Suboxone in December 2013. The claimant's examination findings further illustrated his positive response to psychiatric medication management. With "mild" or sporadic exceptions, the claimant has often had normal or unremarkable psychiatric examination findings with no signs of consistent or persistent behavioral or cognitive abnormalities throughout the period at issue. Even when the claimant periodically complained of hallucinations, it was noteworthy that he was not observed to be responding to internal stimuli.

(Tr. at 34.)

The ALJ observed that Plaintiff's treatment consisted of "just outpatient psychiatric medication management" rather than "emergency, inpatient, or other more aggressive mental health treatment." (Id.) He stated that Plaintiff "required follow-up appointments every two-to-three months for refills of those medications, which were consistently noted as effective and from which he did not report any side-effects." (Id.) He later opined, "If the claimant's symptoms were as severe as alleged, they would have likely prompted more aggressive or varied treatment or presented more consistently or dramatically on examination. However, they did not." (Id.)

The ALJ's analysis of the medical record is not susceptible to meaningful judicial review. Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (citing Mascio, 780 F.3d at 636). Critically, the ALJ did not discuss Plaintiff's medication regimen in any level of detail. While the record appears to show that Plaintiff had a positive response to medication, this relative assessment does not

14

necessarily speak to the question of disability.  Arakas, 983 F.3d at 102 (observing error in ALJ describing treatment as "conservative" when treatment aligned with what is typical for condition); Shelley C., 61 F.4th at 367-68 (discussing how variation in symptoms of major depressive disorder "can appear — from the outside looking in — as overall improvement" but nevertheless finding disability).  Indeed, the ALJ's glancing reference to "medication management" (Tr. at 34), without reference to the fact that those medications included atypical antipsychotics, Zyprexa and Risperdal, (Tr. at 353, 532),[6] leaves the court unable to meaningfully review the ALJ's analysis regarding Plaintiff's treatment.  Shelley C., 61 F.4th at 363 (describing trend among district courts that have held treatment is anything but "routine and conservative" where claimants consume antipsychotic drugs, attend consistent visits with mental health professionals, and constantly adjust medication).

Further, while the ALJ correctly noted that Plaintiff has not received inpatient or emergency care, there is no requirement that a claimant be hospitalized or institutionalized to receive disability benefits.  Easterbrook v. Kijakazi, 88 F.4th 502, 515 (4th Cir. 2023) ("Much as it is beyond the role of a health care

---

[6] General information on Zyprexa and Risperdal is available at https://my.clevelandclinic.org/health/drugs/18192-olanzapine-tablets, and https://my.clevelandclinic.org/health/drugs/20391-risperidone-tablets.

provider to force his patient to undergo the most extreme, risky, costly, or painful treatment, so it is an abuse of the role of an ALJ, and indeed the role of the Social Security Administration, to require that an applicant undergo such treatment before they receive disability benefits."). Moreover, the ALJ's speculation — that treatment would have been "more aggressive or varied" if symptoms were as severe as Plaintiff reported (Tr. at 34) — is without any reference to how these symptoms are ordinarily treated. See Arakas, 983 F.3d at 102 (stating the claimant cannot be faulted for receiving treatment "wholly consistent with how" a condition is "treated generally").

Additionally, the ALJ did not explain why he discounted or did not discuss certain relevant evidence in the treatment notes. While Plaintiff's "overall severity of symptoms" was repeatedly described as "mild" in treatment notes, (Tr. at 445, 451, 456, 461, 466), the ALJ entirely omits any discussion of symptoms that include anxiety attacks, depressed mood, easy distraction, excessive worry, paranoia, and racing thoughts, and the repeated finding that these symptoms affect his ability to work (id.). The ALJ also did not mention Plaintiff's diagnosis of "MAJOR DEPRESSIVE DISORDER, RECURRENT, SEVERE W PSYCH SYMPTOMS" and concluded as a "sporadic exception" an escalation in symptoms in May 2021 when Plaintiff reported experiencing visual and auditory hallucinations. (Tr. at 34, 448.) Indeed, it is entirely unclear

16

from the opinion why the ALJ considered it "noteworthy" that the hallucinations were triggered by "internal stimuli" (Tr. at 34) and, without any citation to authority, why he considered the effect that would have on Plaintiff's overall ability to function as mitigating.[7] At a minimum, the ALJ did not meet the obligation to address "all relevant medical evidence." Arakas, 983 F.3d at 97 (quoting Lewis, 858 F.3d at 869); Thomas, 916 F.3d at 312 (reversing where "the ALJ did not sufficiently explain how she weighed significant evidence related to [the claimant's] mental-health treatment").

To be clear, the court takes no position on whether the provided treatment was conservative or aggressive, or whether the record is consistent with Plaintiff's subjective complaints when all of the relevant factors are considered. The court merely finds that the ALJ's failure to analyze all relevant medical evidence and "build an accurate and logical bridge from the evidence to his conclusion" precludes the court from engaging in a substantial

---

[7] While the ALJ did not cite any authority, the published literature indicates there is some basis to indicate that a more complete explanation is warranted on this record. See, e.g., Nancy M. Docherty et al., Internal versus External Auditory Hallucinations in Schizophrenia: Symptom and Course Correlates, Cognitive Neuropsychiatry, 20:3, 187–97 (2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4372463 (finding that "[p]atients with internal hallucinations did not differ from those with external hallucinations on severity of other symptoms" and reported "their hallucinations to be more emotionally negative, distressing, and long-lasting, less controllable, and less likely to remit over time").

17

evidence analysis.  <u>Lewis</u>, 858 F.3d at 868 (stating that such a failure is "reversible error").[8]  Remand is therefore warranted.

### b.  Daily Activities

Plaintiff contends that the ALJ considered only the type of daily activities he could perform without also considering the extent to which he can perform them.  It is proper for an ALJ to consider daily activities when evaluating symptoms.  20 C.F.R. § 404.1529(c)(3).  However, an "ALJ errs in extrapolating from daily and life activities that a claimant has increased residual functional capacity."  <u>Oakes v. Kijakazi</u>, 70 F.4th 207, 216 (2023).  The Fourth Circuit has insisted that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  <u>Id.</u>  For that reason, review of both the type <u>and extent</u> of daily activities is required, whether or not daily activities directly control the RFC analysis or indirectly affect it, such as through a credibility assessment.  <u>Id.</u>[9]

---

[8] Plaintiff argues in his objections that the ALJ erred in light of the Fourth Circuit's decision in <u>Shelley C.</u>, (Doc. 17 at 21-22), which was published about one week after Plaintiff's initial brief but nevertheless discussed by the magistrate judge.  (Doc. 15 at 18 n.9.)  On this record, the court is unable to assess whether the ALJ relied "entirely upon the belief" that Plaintiff's subjective complaints were not "corroborated by the record's medical evidence" because of the ALJ's lack of explanation.  <u>Shelley C.</u>, 61 F.4th at 360 (emphasis removed).

[9] The Commissioner relies on <u>Ladda v. Berryhill</u>, 749 F. App'x 166, 173 n.4 (4th Cir. 2018), for the proposition that failure to consider the extent of daily activities in a credibility assessment is permissible.  (Doc. 13 at 17.)  Notably, the Commissioner's brief was filed prior to the publication of <u>Oakes</u>, which is now controlling.  <u>Oakes</u>, 70 F.4th at

Here, the ALJ found that Plaintiff's subjective complaints were "undermined by his reported functioning." (Tr. at 34.) The ALJ wrote that Plaintiff reported in July 2021 that he lived and spent time with his mother and wife, that he spoke with his brother, and that he could still perform many of his activities of daily living, including that he could do laundry and other household chores, prepare simple meals, go shopping, drive himself, and manage his finances. (Id.) The ALJ added that Plaintiff testified in May 2022 that he takes his medications, does laundry and other household chores, prepares simple, microwavable meals, drives himself locally, and goes shopping. (Id.)

The ALJ concluded, without any analysis of the extent Plaintiff could perform these daily activities, that his "reported functioning [] contrasted sharply" with the subjective complaints. (Id.) The difficulty with this conclusion is that the court cannot conduct meaningful judicial review of the ALJ's analysis absent discussion of the extent of Plaintiff's daily activities. Moreover, while the ALJ stated that Plaintiff's wife's Third-Party Function reports "largely echoed" Plaintiff's own complaints, this

216 (finding reversible error where ALJ did not "expressly consider" daily activities when determining RFC, but did so (without attention to extent) when expressing skepticism of medical provider's opinion, which "for all intents and purposes, [] influenced the capacity analysis — even if indirectly"). Here, the ALJ used merely the type of daily activities to assess Plaintiff's subjective complaints and explicitly relied on the same to explain the RFC. (Tr. at 35.)

19

depiction fails to account for relevant evidence, such as her role in reminding Plaintiff to bathe, her having to take control of his finances, his distraction while doing chores, his limits on cooking on the stovetop due to forgetting about food and leaving burners on, his inability to drive without his wife present (and his pattern of driving home different routes to "shake" people he believes are following him), etc. (See Tr. at 237-44.) Accordingly, the "lack of explanation requires remand." Oakes, 70 F.4th at 217 (quoting Mascio, 780 F.3d at 640).

Relatedly, the ALJ must explain how Plaintiff's mental limitations affect his ability to "perform job-related tasks for a full workday — a benchmark established by the [SSA's] own regulations." Thomas, 916 F.3d at 312 (emphasis added) (citing SSR 96-8P, 1996 WL 374184 at *2). The ALJ's analysis regarding Plaintiff's durational capacity to work is limited to rejecting a doctor's finding that Plaintiff could only perform tasks for up to two hours at a time. (Tr. at 35.) The ALJ rejected this conclusion by incorporating by reference the same grounds the court has found were inadequately explained above. (Id. at 35-36 (stating that psychiatric findings and reported functioning "did not indicate that he had problems with sustaining attention and concentration for more than two hours"). In light of the reported subjective complaints by Plaintiff and his wife that were inconsistent with this conclusion, more explanation is needed to

"facilitate meaningful appellate review." <u>Thomas</u>, 916 F.3d at 312; (<u>see</u> Tr. at 54 (Plaintiff stating that the longest period he could stay on task is "30 to 45 minutes at a time")); <u>cf.</u> <u>Mascio</u>, 780 F.3d at 638 ("[T]he ability to perform simple tasks differs from the ability to stay on task.").[10]

## 2. Treating Psychiatric Provider's Opinion

Finally, Plaintiff objects to the ALJ's review of the opinions of Nurse Practitioner Sugaree Ganzman, his treating psychiatric provider. (Doc. 17 at 13.) NP Ganzman supplied two opinions, on June 2, 2021, and February 25, 2022. (Tr. at 521, 537.) These one-page forms include the frequency and length of Plaintiff's contact with NP Ganzman, diagnoses, treatment and response, a list of prescribed medications and side effects, and clinical findings. (<u>Id.</u>) The final question asks:

> Given the nature and severity of [Plaintiff's] psychological conditions, does he have the physical and/or mental capacity to perform gainful employment on a full-time continuing basis that is, 8 hours/day, 5 days/week or an equivalent schedule?

(<u>Id.</u>) On both opinion forms, NP Ganzman checked "No" and in the space for explanation wrote "pt has uncontrolled paranoia, hallucination, irritability," (Tr. at 125) and "paranoia, hallucinations, panic, insomnia, and agitation" (Tr. at 141). In

---

[10] Plaintiff also argues that the ALJ failed in the RFC to adequately address limitations identified at step three of the opinion. (Doc. 17 at 12; <u>see also</u> Doc. 12 at 26 (citing <u>Mascio</u>, 780 F.3d at 637–39).) The court need not address this objection as remand on the grounds stated would appear to resolve Plaintiff's concern as well.

evaluating these opinions, the ALJ wrote:

> The claimant's treating psychiatrist, Nurse Practitioner Sugaree Ganzman, prepared treating source statements in June 2021 and February 2022. She opined in both statements that the claimant was unable to sustain gainful employment on a full-time continuing basis because of "uncontrolled paranoia, hallucinations, irritability" in June 2021 and then because of "paranoia, hallucinations, panic, insomnia, agitation" in February 2022. I found that Ms. Ganzman's medical opinions were not persuasive because she did not explain how the claimant's list of symptoms supported her conclusions. Moreover, Ms. Ganzman's medical opinions were inconsistent with her treatment notes, which show that the claimant had only "mild" symptoms, that his symptoms improved or were stable with psychiatric medication management, and that he had limited positive psychiatric examination findings with no signs of consistent or persistent behavioral or cognitive abnormalities, all of which further undermined her poorly supported conclusions.

(Tr. at 36.)

The ALJ was not required to "give any special significance to the source of an opinion on issues reserved to the Commissioner." Shelley C., 61 F.4th at 356. This includes an opinion on whether a claimant is "'disabled' or 'unable to work.'" Id. (dismissing as a "semantic dispute" whether "unemployable" and "unable to work" are synonymous). Thus, the court cannot say, as Plaintiff urges, that the ALJ erred in rejecting NP Ganzman's specific opinion as to Plaintiff's "capacity to perform gainful employment."

However, when the ALJ "found that [NP] Ganzman's medical opinions were not persuasive," (Tr. at 36 (emphasis added)), the

22

ALJ failed to consider the relevant factors for doing so under 20 C.F.R. § 404.1520c(c)(1)-(5).[11]  In fact, to the extent the ALJ discussed NP Ganzman's medical opinions, the analysis suffers from the same lack of explanation regarding Plaintiff's medical records discussed above.  (Tr. at 36 (relying again on reference to "psychiatric medication management" and "limited positive psychiatric examination findings").)  The court is therefore unable to conduct a substantial evidence analysis of the ALJ's review of NP Ganzman's medical opinions because the ALJ did not build a "logical bridge" between the evidence and his conclusions. Lewis, 858 F.3d at 868.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Plaintiff's objections (Doc. 17) are SUSTAINED in part to the extent described herein;

IT IS FURTHER ORDERED that the Commissioner's decision finding no disability is REVERSED, and that this matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

---

[11] These factors are (1) supportability; (2) consistency; (3) a physician's relationship with the claimant; (4) a physician's specialization; and (5) other factors, like a physician's familiarity with the evidentiary record or their understanding of the SSA's policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5). Of these factors, supportability and consistency are the most important.  Id. § 404.1520c(a), (b)(2).

23

To this extent, Defendant's Dispositive Brief (Doc. 13) is DENIED, and Plaintiff's Dispositive Brief (Doc. 12) is GRANTED.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge

March 29, 2024